UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

RYAN F.,[1]                                          Case No. 3:22-cv-01478-MK

                    Plaintiff,                        **OPINION AND
                                                         ORDER**

        v.

COMMISSIONER, Social Security
Administration,

                    Defendant.
———————————————————————

**KASUBHAI,** United States Magistrate Judge:

        Plaintiff Ryan F. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for disability

insurance benefits (DIB) under Title II of the Social Security Act (the "Act"). The Court has

jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties

consented to allow a Magistrate Judge to enter final order and judgment in this case in

———————————————

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 17. For the reasons

explained below, the Commissioner's decision is REVERSED and REMANDED for further

proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed his application for DIB on February 7, 2019, alleging disability as of

January 15, 2018.[2] Tr. 59–60. His application was denied initially and upon reconsideration. *Id.*

at 69, 84. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a

hearing was held on August 11, 2021. *Id.* at 29–58. On September 22, 2021, the ALJ issued a

decision finding Plaintiff not disabled within the meaning of the Act. *Id.* at 13–23. The Appeals

Council denied Plaintiff's request for review on August 10, 2022. *Id.* at 1–6. This appeal

followed.

## FACTUAL BACKGROUND

Born in 1980, Plaintiff was 37 years old on his alleged onset date. *Id.* at 22, 60. He has a

high school education and past work experience as a salesclerk and salesperson. *Id.* at 22.

Plaintiff alleged disability due to glaucoma and legal blindness. *Id.* at 61, 64, 74.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record. *Hammock v.*

*Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court

---

[2] "Tr." refers to the Transcript of Social Security Administrative Record provided by the
Commissioner. ECF No. 9-1.

must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or

equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations their impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(e). If the claimant can work, they are not disabled; if they cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since the amended alleged onset date of January 15, 2018. Tr. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: "bilateral aphakic glaucoma and migraine headaches." *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of a listed impairment. *Id.* at 16–17. The ALJ then assessed Plaintiff's RFC

and found Plaintiff was capable of performing medium work with the following limitations:

> [H]e can frequently perform work requiring near and far acuity and
> accommodation and field of vision; and should avoid all exposure
> to work hazards, such as moving machinery and unprotected
> heights; and can perform work in environments involving normal
> ambient lighting.

*Id.* at 17.

At step four, the ALJ found Plaintiff was able to perform his past relevant work as a

salesclerk in food and a salesperson in general merchandise. *Id.* at 21. In addition to past relevant

work, the ALJ found that a significant number of other jobs existed in the national economy

which Plaintiff could perform despite his limitations, including janitor, hand packager, bagger,

and change house attendant. *Id.* at 22–23. The ALJ therefore concluded that Plaintiff was not

disabled. *Id.* at 23.

## DISCUSSION

Plaintiff argues that the ALJ erred in (1) failing to identify specific, clear, and convincing

reasons for rejecting Plaintiff's subjective symptom testimony; and in (2) making an RFC

formulation not supported by substantial evidence. Pl.'s Br. 6–10, ECF No. 13. Plaintiff asks the

Court to remand for immediate payment of benefits, or in the alternative, for further proceedings

because the ALJ committed harmful error. *Id.* at 11.

### I.    Subjective Symptom Testimony

Plaintiff first argues that the ALJ rejected his symptom testimony for reasons that were

neither clear nor convincing. *Id.* at 9. When a claimant has medically documented impairments

that could reasonably be expected to produce some degree of the symptoms complained of, and

the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's

testimony about the severity of . . . symptoms only by offering specific, clear and convincing

reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2016 WL 1119029, at *1–2 (March 16, 2016). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

During the administrative hearing, Plaintiff testified he experiences both ocular and "regular" migraines. Tr. 45–46. While his regular migraines respond to treatment and occur "once or twice, maybe three times" a year, Plaintiff testified that the "typical migraine medicine . . . doesn't work on an ocular migraine," which he testified to having about three times a week. *Id.* at 43–45. When Plaintiff has an ocular migraine, he testified that he must "be in a dark room" the entire time due to his symptoms. *Id.* at 44. The ocular migraines last between 24

and 36 hours, but Plaintiff testified he experienced "weakness" and feeling "foggy-minded" after

coming out of a migraine. *Id.* at 45. Additionally, Plaintiff testified that he "was unable to go to

work on a daily basis" when working at West Coast and WinCo. *Id.* at 43. Due to his migraines,

he missed work around 3 to 5 days a week at West Coast and 3 days a week at WinCo. *Id.* at 43.

Because Plaintiff "call[ed] in sick all the time," Plaintiff testified that he was disciplined at both

jobs and quit as a result. *Id.* at 43–44. Plaintiff further testified that, in the absence of a migraine,

he would be still unable to see well enough to work "due to the lighting" and his blurred vision.

*Id.* at 56. Plaintiff reports he is unable to cook, needs his mother's assistance for personal

grooming, and uses public transportation around once a week to get out of the house and get a

coffee. *Id.* at 47–48.

   The ALJ rejected Plaintiff's subjective symptom testimony on the grounds that while

Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's

"statements concerning the intensity, persistence and limiting effects of these symptoms [were]

not entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in [the] decision." *Id.* at 17–18. The Commissioner asserts that the ALJ properly

rejected Plaintiff's subjective symptom testimony for three reasons: (1) the testimony

contradicted his reported activities; (2) the testimony was inconsistent with the objective medical

evidence; and (3) Plaintiff's migraines were controlled with medication. Def.'s Br. 9–14, ECF

No. 15.

   ### a.  Daily Living Activities

   First, the ALJ rejected Plaintiff's testimony based on his daily activities. Tr. 18.

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two

ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable

work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at

639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and

sporadic completion of minimal activities is insufficient to support a negative credibility finding.

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715,

722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged

limitations to be relevant to his or her credibility).

      Here, the ALJ cited multiple activities, including Plaintiff's ability to use public

transportation, shop in stores, watch television, maintain personal grooming without assistance,

and assist his father in cutting wood with a chainsaw. Tr. 18. The Ninth Circuit has consistently

instructed that such a modest level of activity is not sufficient to reject subjective complaints.

*E.g.*, *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a

plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

walking for exercise, does not in any way detract from her credibility as to her overall disability.

One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*,

885 F.2d 597, 603 (9th Cir. 1989)); *Sandra M. v. Comm'r, Soc. Sec. Admin.*, 426 F. Supp. 3d

647, 656 (D. Or. 2019) (error when ALJ discounted plaintiff's migraine testimony based on her

ability to cook, perform light household chores, drive, bowl, and go shopping once a week).

Thus, Plaintiff's modest level of activity was not a clear and convincing reason to reject

Plaintiff's symptom testimony.

### b.  Objective Medical Evidence

      As a second reason for rejecting Plaintiff's testimony, the ALJ found that the medical

evidence did not support Plaintiff's claimed limitations. Tr. 18–19; Def.'s Br. 9–14. An ALJ may

reject a claimant's symptom testimony if that testimony is contradicted by evidence in the

medical record. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); see also 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Regarding Plaintiff's aphakic glaucoma and ocular migraines, the ALJ relied on the following provider's opinions: Carmen M. Morales, PA, and John Samples, MD. Tr. 21(citing Tr.  286–93, 304–11, 322–29, 340–79, 486–97, 500–02, 537, 558, 581–82, 599). Plaintiff was treated by Carmen Morales in March 2021 for an ocular migraine, where Plaintiff admitted that "his last migraine was several months ago" and that he can usually manage the migraines with over-the-counter Excedrin. *Id.* at 582. Further, John Samples found that Plaintiff had stable visual fields, visual acuity at or above 20/100 -1, no evidence of disease progression, and relief with prescribed eyedrops. *Id.* at 286–93, 304–11, 322–29, 370, 374, 376, 378, 343, 486–88, 493–94, 496, 500–02.

The ALJ found that this medical evidence suggested that Plaintiff's "exertional, visual, and environmental limitations . . . are not as severe as alleged" by Plaintiff. *Id.* at 21. For example, the ALJ determined that Plaintiff's "symptoms generally remained controlled with prescribed and over-the-counter medications and diagnostic testing showed no evidence of disease progression," despite Plaintiff's "complain[ts] of light sensitivity and occasional migraine headaches." *Id.* (citing Tr.  286–93, 304–11, 322–29, 340–79, 486–97, 500–02, 537,

558, 581–82, 599). Further, the ALJ discredited Plaintiff's testimony about his visual limitations, finding "although [Plaintiff] had reduced visual acuity, poor fixation, and constricted visual fields with spotty peripheral loss, his corrected visual acuity in either eye was never worse than 200/-1 in either eye and his visual fields remained relatively stable." *Id.* The ALJ found this medical evidence contradicted the severity of symptoms as alleged by Plaintiff; therefore, the medical evidence was a clear and convincing reason to reject Plaintiff's testimony about his visual limitations and question Plaintiff's testimony about the severity and frequency of his migraines.

### c. Medication

Further, when discounting Plaintiff's testimony about his migraines, the ALJ noted Plaintiff's "symptoms generally remained controlled with prescribed and over-the-counter medications." Tr. 21. Treatment records as well as the "type, dosage, effectiveness, and side effects of any medication" are appropriate factors for an ALJ to consider in assessing a claimant's subjective symptom testimony. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Evidence of a favorable response to conservative treatment—including the effective "use of anti-inflammatory medication"—can undermine a claimant's report of disabling pain. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

Here, the ALJ cited Plaintiff's medical record, where he admitted to his doctor that "he is normally able to manage [his migraines] with over-the-counter Excedrin." Tr. 21 (citing Tr. 582). This was a clear and convincing reason to discount Plaintiff's subjective symptom testimony regarding his migraines. *See Parra*, 481 F.3d at 750–51 (finding use of "over-the-counter pain medication" sufficient evidence of conservative treatment to discount a claimant's testimony); *Pamela W. v. Saul*, No. 6:19-CV-00611-SB, 2020 WL 1874112, at *6 (D. Or. Apr.

15, 2020) (finding the management of plaintiff's migraines with medication and caffeine a clear and convincing reason to reject plaintiff's symptom testimony).

## II.    RFC Formulation

Plaintiff also contends that the ALJ's RFC formulation is not supported by substantial evidence "[b]ecause none of the treating examining, or reviewing doctors provided specific functional limitations related to Plaintiff's vision[.]" Pl.'s Br. 8. The RFC is the most a person can do despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC assessment must be "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). An ALJ may not "rely on his own unsupported interpretation of the medical evidence" when determining a Plaintiff's RFC formulation. *Davis v. Colvin*, No. 3:15-CV-00843-SI, 2016 WL 8674265, at *8 (D. Or. Aug. 12, 2016) (citing *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (finding that "the ALJ impermissibly relied on his own medical opinions as to the limitations presented")).

Here, the ALJ determined that Plaintiff can perform medium work, "frequently perform work requiring near and far acuity and accommodation and field of vision," and "work in environments involving normal ambient lighting," but "should avoid all exposure to work hazards, such as moving machinery and unprotected heights." Tr. 17. Dr. Jordon Lubahn did not provide any functional limitations, and Dr. Linda Medeski was unable to provide specific functional limitations due to errors with the tests performed. *Id.* at 20 (citing Tr. 335, 481). Consultive examiners Dr. Robert Handler and Dr. Clarence Ballard opined only that Plaintiff "does not have any exertional limitations but has limited near, acuity, far acuity, accommodation,

and field of vision bilaterally and needs to avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights." *Id.* at 19 (citing Tr. 66–67, 81–83).

"Without a medical opinion to support the conclusion that Plaintiff was able to perform" a certain level of work with specific functional limitations, "the ALJ's RFC lacks the support of substantial evidence." *de Gutierrez v. Saul*, No. 1:19-CV-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020); *see also Peter B. v. Comm'r, Soc. Sec. Admin.*, No. 1:21-CV-00437-YY, 2022 WL 3010162, at *3 (D. Or. July 28, 2022) (collecting cases finding that an ALJ cannot base an RFC on their lay interpretation of the medical evidence). While citing to Dr. Handler and Dr. Ballard's assessment that Plaintiff's visual acuity, accommodation, and field of vision is "limited," it is unclear what medical opinion the ALJ relies on to conclude that Plaintiff can "frequently perform work requiring near and far acuity and accommodation and field of vision." Tr. 17, 66–67, 81–83. For an RFC, "frequently" means that a plaintiff can cumulatively perform the specified type of work "a full two-thirds of an 8-hour day." Soc. Sec. Admin., DI 24510.050 Completion of the Physical RFC Assessment Form (2012); *see Fuller v. Colvin*, No. 6:15-CV-01896-MC, 2016 WL 7246075, at *6 (D. Or. Dec. 15, 2016) (The term "frequent" stands for "approximately 6 hours of an 8–hour workday"). Because frequency is a specific functional limitation that requires a medical opinion, the ALJ erred when concluding that Plaintiff could "frequently perform work requiring near and far acuity and accommodation and field of vision" in the RFC without a corresponding medical opinion. Tr. 17–21; *See de Gutierrez*, 2020 WL 5701019, at *6 (RFC is not supported by substantial evidence when ALJ found plaintiff could carry twenty-five pounds frequently without a medical opinion supporting that specific

limitation). Thus, the ALJ's RFC formulation is not supported by substantial evidence in the record. Accordingly, the ALJ's decision must be reversed, and the action remanded.

### III.    Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016). Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts . . . serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, as to the first requisite, the Court has already explained that the ALJ's RFC was unsupported by substantial evidence because the record lacks a medical opinion that supports the specific functional limitations the ALJ included.

However, with respect to the second requisite, the record is not fully developed on the question of Plaintiff's functional limitations sufficient to formulate an RFC and determine whether Plaintiff is disabled. Further proceedings are therefore appropriate.

This case is therefore remanded for further administrative proceedings. On remand, the ALJ shall: (1) reevaluate Plaintiff's subjective symptom testimony and the medical opinion evidence; and (2) develop the medical opinion record as necessary. *See Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Peter B.*, WL 3010162, at *3 (remanding for further proceedings and instructing the ALJ to develop the record further when the RFC is not supported by substantial evidence).

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 14th day of March 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge